393 F.2d 162
 In the Matter of RICHARDS MUSICAL INSTRUMENTS, INC., Bankrupt.
The FIRST NATIONAL BANK OF CHICAGO, a National Banking
Association, Appellant,
v.
MARSHMAN, HORNBECK, HOLLINGTON, STEADMAN & McLAUGHLIN, Appellee.
 No. 16440.
 United States Court of Appeals Seventh Circuit.
 March 25, 1968.
 
 George A. Hansen, Chicago, Ill., Thomas V. Happer, Elkhart, Ind., for appellant.
 Edward C. Crouch, Cleveland, Ohio, Charles W. Steadman, Washington, D.C., for appellee.
 Before HASTINGS, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 The First National Bank of Chicago (Bank) appeals from a judgment of the bankruptcy court denying the Bank's motion to alter, amend, reconsider or vacate an order allowing attorneys' fees, part of which were given priority over claims of the Bank and other general creditors. We affirm.
 
 
 2
 Richards Musical Instruments, Inc. (Richards) was created by a merger of various small musical instrument businesses and began operating in 1960. Claimant, Marshman, Hornbeck, Hollington, Steadman & McLaughlin, has served as attorney for Richards since that time. Richards' operations resulted in losses, and on May 10, 1963, its creditors entered into a Creditors Agreement which provided a moratorium on payment of debts incurred prior to the date of Agreement and gave a priority to the payment of debts incurred after that date in the event of bankruptcy. Promissory notes were issued to cover Richards' obligations and Claimant was given a note for $74,899.04 covering its bills for past legal services and expenses.
 
 
 3
 An Advisory Committee was set up under the terms of the Agreement, and Claimant continued rendering services and incurring expenses on behalf of Richards. Claimant was paid and reimbursed up to December 1, 1963, but was not paid for its services rendered, and expenses incurred, between that date and April 15, 1964, when Richards filed a Chapter XI proceeding for an arrangement. No plan was submitted to the bankruptcy court and on May 22, 1964, Richards was adjudged bankrupt.
 
 
 4
 Claimant filed Proof of Claim on November 3, 1964, for $74,899.04, the amount of the promissory note, and for $37,090.95, the amount of fees and expenses from December 1, 1963, to April 15, 1964. At the same time Claimant filed a Supplemental Petition praying for priority of payment, over other general creditors, to the extent of $37,090.95, pursuant to the Creditors Agreement.
 
 
 5
 The Trustee in Bankruptcy objected to the claim and petition on the grounds that the services after December 1, 1963, were rendered in contemplation of bankruptcy, that one of Claimant's partners was an officer of Richards, and that there was not adequate consideration to support the claim. The district court on February 1, 1967, overruled the objection, allowed a general claim as to the $74,899.04, and a priority of claim to the balance, in dispute here, of $37,090.95.
 
 
 6
 The Trustee thereafter filed a petition to 'alter * * * or vacate' the February 1, 1967, order on the ground that the claim did not name all creditors who signed the May 10 agreement or state to what extent claims of other creditors should be subordinated to those of the Claimant. The court on July 6, 1967, denied the prayer of the petition and in an expanded order confirmed the allowance of February 1, finding that the claims of all other creditors for debts arising prior to May 10, 1963, were embraced in the Creditors Agreement and thereby subordinated to those of the Claimant arising from services rendered after May 10.
 
 
 7
 The Bank on July 12, 1967, filed a similar motion to set aside the order of February 1 on the grounds that Claimant did not in its claim name the Bank or claim subordination against it, that since the agreement had expired on January 21, 1964, there was no basis upon which Claimant could be entitled to priority and that a partner of Claimant was an Officer and director of Richards. On July 21, 1967, the district court denied the Bank's petition and this appeal followed, challenging only the allowance of $37,090.95 as a prior claim to which the Bank's general claim of $2,418,544.38 was subordinated.
 
 
 8
 The district court made a reexamination, under Sec. 60(d), of the reasonableness of the fees which were given priority. It found that the fees claimed were reasonable. The Bank must show this finding is clearly erroneous and the allowances an abuse of the district court's discretion. In re Schumaker Const. Inc., et al., 7 Cir., 346 F.2d 353, 355; In re Hamburger, 7 Cir., 103 F.2d 664, 665.
 
 
 9
 The description of services, fees and expenses rendered from December 1, 1963, given in Exhibit B to claimant's petition, covers nearly forty pages of the Appendix. Claimant's witness at the hearing testified fully under direct and cross-examination with respect to the fees charged and paid for the period, among others, from May 10, 1963, to April 15, 1964. The district court found that the sums paid Claimant to April 15, 1964, were not unreasonable '* * * on * * * this record when weighed in the light of the size of this merged undertaking and * * * in the light of all the facts * * * hours involved (and) * * * services performed. * * *'
 
 
 10
 We see no merit in the Bank's challenge to the allowances on the grounds of number of hours, charges for services for Saturdays and Sundays, duplication of charges for two attorneys at the creditors meetings, and charges averaging in some instances more than nine hours per day. No claim of impropriety is made and there is no charge that the district court did not properly consider the factors needed for proper determination of the amounts allowed. The description of the services, time, amounts and all other information implicit in the charges was before the district court, and we see no basis for a claim that the court's allowances were an abuse of discretion.
 
 
 11
 Appellant contends that the fact that one of Claimant's partners was an officer and director of Richards demonstrates that the fees should have been held unreasonable. It is true that fees paid to a claimant in a fiduciary relationship with the bankrupt must be 'subjected to rigorous scrutiny' and that the burden is on the claimant to demonstrate that 'the transaction carries the earmarks of an arm's length bargain.' Goldie v. Cox, 8 Cir., 130 F.2d 695, 699. We are satisfied that the Claimant fulfilled its burden and that the court gave the transaction careful scrutiny at the hearing on the reasonableness of the fees.
 
 
 12
 There is no merit whatever in the Bank's argument that no right to priority was alleged against it. Claimant sought priority for its claim of $37,090.95 over the 'other signatories' to the Creditors Agreement. The Supplemental Petition described the 'parties signatory' as those 'listed in Schedule A-3' of the bankrupt's petition 'as set forth' in Exhibit B to the petition. The Bank was not listed in that schedule. The Bank, however, was the second party in, and signed, the Creditors Agreement which was made an exhibit to both the Claim and Supplemental Petition. The Bank was given notice of, was represented at and participated in the hearing on the Trustee's petition under Sec. 60(d), and challenged there the allowance of fees and order of subordination. The Bank made no objection in the district court concerning its omission from schedule A-3.
 
 
 13
 The Bank contends the February 13, 1964, telegrams from five members of the Advisory Committee were ineffective to extend the Creditors Agreement beyond January 31, 1964. It argues that the Creditors Agreement limited extensions to Committee action prior to or upon January 31, 1964, the due date of the notes, and that priority should be limited to services rendered before January 31, 1964.
 
 
 14
 The Proof of Claim and Supplemental Petition with respect to priority for the fees of $37,090.95 rested upon Par. 8.1[1] of the Creditors Agreement, which provided for priority of payment 'in ordinary course of business' or in event of bankruptcy for claims for '* * * services * * *' necessary during the life of the Agreement. The February 13 telegraphed resolution provides for a nunc pro tunc extension, as of January 9, 1964, of the notes 'presently held.'
 
 
 15
 The Advisory Committee was empowered to act to extend the Agreement by a telegram signed by five of its members. The February 13 telegram followed requests to the Committee for the extension of the notes to April 30, 1964. A letter dated February 24 told creditors of the extension in accordance with the Agreement.
 
 
 16
 The Bank shows no prejudice from the Committee action. It was not prevented from seeking payment of its note and did not protest the action of the Committee. The Creditors Agreement was not to expire 'in any event' until November 30, 1964. We think the district court was justified in concluding that the parties to the Creditors Agreement intended that the Agreement would continue in force to the date of filing of the petition in bankruptcy and that the service rendered by the Claimant was in reliance upon that intention. The court did not err in rejecting the Bank's contention, in its motion, that the Agreement expired January 31, 1964.
 
 
 17
 For the reasons given, the judgment of July 21, 1967, denying the Bank's motion to alter, amend, reconsider or vacate is affirmed.
 
 
 18
 Affirmed.
 
 
 
 [1]
 8.1 It is further agreed that during the period of this Agreement all claims for labor, salaries, wages, services, materials, supplies, merchandise and other necessary operating expenses for work performed or merchandise purchased after this Agreement is declared effective, and including the obligations and disbursements of the Committee, shall have priority and preference and be paid in the ordinary course of business and, in the event of the Company's assets or any part thereof being marshalled or liquidated by any court of law, equity or bankruptcy or by any assignee for the benefit of Creditors, shall be paid in full before any distribution shall be made to any of the undersigned on any liability hereby extended and subordinated,-- provided, however, that the right of the Bank to the exclusive benefit of the collateral security now or hereafter held by it shall not be impaired or altered by any of the provisions of this section 8